## Case No. 2,078.

BUCK et al. v. CHESAPEAKE INS. CO.

[1 U. S. Law Int. (1829) 313.]

Circuit Court, D. Maryland.

INSURANCE—REPRESENTATION TO PROCURE — CUSTOM AND USAGE.

[At law. Action on a policy of insurance. Verdict and judgment for plaintiffs.]

Hoffman and Mayer, for plaintiffs.

Wirt, Purviance, and Meridith, for defendant.

The very interesting cause of [Benjamin] Buck and [Thomas] Hedrick (use of [Daniel] Fitch and [Gregorio] Medina) v. The Chesapeake Insurance Company was decided yesterday morning for the plaintiffs. It was argued with equal confidence (as usual in such cases) on both sides, and involved the question whether policies "for whom it

4FED.CAS.—35

may concern," cover belligerent property, in the absence of a warranty or clear representation of neutrality; and also the question whether a certain letter written to Fitch, amounted in law to a representation that there was no Spanish property. These points having been decided by the supreme court in favor of the plaintiffs,[1] a new and substantive representation was set up, and much discussion of law and fact arose as to the nature of representations; whether any allegation can amount to a representation, where it is accompanied by the statement of such inferential reasons as manifest strong belief on the part of the applicant for insurance, but not positive knowledge. The fact whether the alleged representation took place on the execution of the first or second policy, was strongly contested, the first being for Spanish, and the second for American account; and the representation, if made on the 6th May, the date of the first policy, would (if material) annul the first and larger policy. The plaintiffs' counsel contended, with much zeal, that the alleged representation must have occurred on the 24th May, when the second policy was effected, and that the representation itself (whenever it occurred) was wholly immaterial, if the jury should believe from the strong evidence in the cause, that the premium of insurance would have been the same. or less, had it been expressly declared to be on Spanish account, but documented as American, and on board of an American vessel. There was much evidence on this point, which, however, was confined to orders accepted, or policies executed by the defendants, though the court's permission was more ample, and allowed the practice of other offices to be enquired into, with a view of showing the absolute immateriality of the risk, and that the relation subsisting in 1822, and up to this period, between the Spanish colonies and the mother country, was not such a one as the offices, and the office of the defendant in particular, regarded as creative of a belligerent risk. The jury retired on Tuesday evening at about six o'clock, and rendered their verdict yesterday morning at the opening of the court, being in their room upwards of 41 hours, that is, two nights, and part of three days. We are pleased to state that the barbarous relic of ancient days was not so tenaciously adhered to, as to deny the jury necessary food, &c.. and thus to starve them into unanimity. Still their hours must have hung on somewhat heavily. The duty of jurymen, solemn and important, was zealously sustained on the present occasion, and a verdict was rendered for the full amount of the plaintiffs' claim, $11,200.

[1] [1 Pet. (26 U. S.) 151.]